# Exhibit A

# BuzzFeed

## MUTUAL NONDISCLOSURE AGREEMENT

Each undersigned party (the "Receiving Party") understands that the other party (the "Disclosing Party") has disclosed or may disclose information relating to a potential business relationship or transaction between the parties or to the Disclosing Party's business (including, without limitation, business partners, computer programs, technical drawings, algorithms, know-how, formulas, processes, ideas, inventions (whether patentable or not), schematics and other technical, business, financial, customer and product development plans, forecasts, strategies and information), which is in writing, by way of any other media or is disclosed orally or visually and is either marked as "Confidential", "Proprietary" or the like or is disclosed in such a manner that a reasonable person would understand that such information is confidential, and which to the extent previously, presently or subsequently disclosed to the Receiving Party is hereinafter referred to as "Proprietary Information" of the Disclosing Party.

In consideration of the parties' discussions and any access of the Receiving Party to Proprietary Information of the Disclosing Party, the Receiving Party hereby agrees as follows:

1.   The Receiving Party agrees (i) to hold the Disclosing Party's Proprietary Information in confidence and to take reasonable precautions to protect such Proprietary Information (including, without limitation, all precautions the Receiving Party employs with respect to its confidential materials), (ii) not to divulge any such Proprietary Information or any information derived therefrom to any third person other than Receiving Party's employees, affiliates and agents who have a need to know for the permitted purpose and who are apprised of and have agreed to the confidential nature of the Proprietary Information and all of the restrictions in this Agreement, (iii) not to make any use whatsoever at any time of such Proprietary Information except to evaluate internally its relationship with the Disclosing Party, and (iv) not to copy or reverse engineer any such Proprietary Information. Each party shall be responsible for any breach of confidentiality by its respective employees and agents. Without granting any right or license, the Disclosing Party agrees that the foregoing shall not apply with respect to any information that the Receiving Party can document (a) is or becomes (through no improper action or inaction by the Receiving Party or any affiliate, agent, consultant or employee) generally available to the public, or (b) was in its possession or known by it without restriction prior to receipt from the Disclosing Party, or (c) was rightfully disclosed to it by a third party without restriction, or (d) was independently developed without use of any Proprietary Information of the Disclosing Party by employees of the Receiving Party who have had no access to such information.

2.   Any disclosure by the Receiving Party of any of the Disclosing Party's Proprietary Information pursuant to applicable federal, state or local law, regulation or a valid order issued by a court or governmental agency of competent jurisdiction (a "**Legal Order**") shall be subject to the terms of this Section. Prior to making any such disclosure, the Receiving Party shall make commercially reasonable efforts to provide the Disclosing Party with (a) prompt written notice of such requirement so that the Disclosing Party may seek, at its sole cost and expense, a protective order or other remedy; and (b) reasonable assistance, at the Disclosing Party's sole cost and expense, in opposing such disclosure or seeking a protective order or other limitations on disclosure. If, after providing such notice and assistance as required herein, the Receiving Party remains subject to a Legal Order to disclose any Proprietary Information, the Receiving Party shall disclose no more than that portion of the Proprietary Information which, on the advice of the Receiving Party's legal counsel, such Legal Order specifically requires the Receiving Party to disclose and, upon the Disclosing Party's request, shall use commercially reasonable efforts to obtain assurances from the applicable court or agency that such Proprietary Information will be afforded confidential treatment.

3.   Immediately upon a request by the Disclosing Party at any time the Receiving Party will turn over to the Disclosing Party all Proprietary Information of the Disclosing Party and all documents or media containing any such Proprietary Information and any and all copies or extracts thereof, or at Disclosing Party's request, destroy such Proprietary Information and confirm in writing that it has done so. The Receiving Party understands that nothing herein (i) requires the disclosure of any Proprietary Information of the Disclosing Party or (ii) requires the Disclosing Party to proceed with any transaction or relationship.

4.   The term of this Agreement shall commence on the Effective Date and shall terminate at any time by providing written notice to the other Party. Notwithstanding anything to the contrary herein, each Party's rights and obligations under this Agreement shall survive any expiration or termination of this Agreement for a period of two

(2) years from the date of any disclosure by the Disclosing Party, even after the return or destruction of Proprietary Information by the Receiving Party.

5.  The Parties agree that neither Party shall be under any legal obligation of any kind whatsoever, or otherwise be obligated to enter into any business or contractual relationship, investment, or transaction, by virtue of this Agreement, except for the matters specifically agreed to herein. Either Party may at any time, at its sole discretion with or without cause, terminate discussions and negotiations with the other Party, in connection with the Purpose or otherwise.

6.  The Receiving Party acknowledges and agrees that due to the unique nature of the Disclosing Party's Proprietary Information, there can be no adequate remedy at law for any breach of its obligations hereunder, which breach may result in irreparable harm to the Disclosing Party, and therefore, that upon any such breach or any threat thereof, the Disclosing Party shall be entitled to appropriate equitable relief, without the requirement of posting a bond or surety, in addition to whatever remedies it might have at law. In the event that any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be illegal, invalid or unenforceable, such provisions shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect. This Agreement shall be governed by the law of the State of New York without regard to the conflicts of law provisions thereof. This Agreement supersedes all prior discussions and writings and constitutes the entire agreement between the parties with respect to the subject matter hereof. The prevailing party in any action to enforce this Agreement shall be entitled to costs and attorneys' fees. Neither Party may assign any of its rights hereunder without the prior written consent of the other Party, except that either party may assign the Agreement to an affiliate, its parent or subsidiaries, or to an entity that acquires all or substantially all of the party's assets and assumes all liability related to the rights under this Agreement. Any purported assignment in violation of this Section shall be null and void. No assignment shall relieve the assigning Party of any of its obligations hereunder. This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement. No waiver or modification of this Agreement will be binding upon a party unless made in writing and signed by a duly authorized representative of such party and no failure or delay in enforcing any right will be deemed a waiver.

7.  **Notice of Immunity Under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1833(b).** Notwithstanding the obligations listed above, the Receiving Party is aware that the Receiving Party shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made: (1) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law; or (2) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the Effective Date.

| **BUZZFEED, INC.** | **Company: OZY Media Inc.** |
|---|---|
| By: _[DocuSigned signature]_ | By: _Samir Rao_ [DocuSigned] |
| Print: Jonah Peretti | Print: Samir Rao |
| Title: CEO | Title: VP Operations |
| Date: 9/23/2019 | Date: 9/23/2019 |